IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER ADAM JACKSON,

     Plaintiff,

     v.

JORDAN BESWICK, et al,

     Defendants.

Case No. 20-CV-2196-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Christopher Jackson, who proceeds *pro se*, filed a Complaint on April 14, 2020, alleging extortion, intentional tort, intentional infliction of emotional distress, and malicious prosecution against Defendants Jordan Beswick, Scott Gossett, Richard Jandt, and Megan Rice.[1] Plaintiff also moved to proceed *in forma pauperis*.[2] In a May 6, 2020 order, Magistrate Judge Teresa J. James granted Plaintiff's motion to proceed *in forma pauperis*, and ordered Plaintiff to show cause as to why this action should not be dismissed for failure to state a claim on which relief can be granted, lack of jurisdiction, and improper venue, on or before May 22, 2020.[3] Plaintiff filed an Amended Complaint[4] on May 22, 2020, and a "Response re Order to Show Cause"[5] on May 26, 2020. His Amended Complaint makes claims under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and abandons all other claims.

---

[1] Doc. 1 at 1.

[2] Doc. 3.

[3] Doc. 4. The Order also noted that "Plaintiff does not provide sufficient information to determine whether his claims are asserted within the applicable statute of limitations." *Id.* at 3.

[4] Doc. 6.

[5] Doc. 7.

Although Plaintiff's Response is untimely, the Court has reviewed it and Plaintiff's Amended Complaint under 28 U.S.C. § 1915 to determine whether dismissal of this action is proper. Because Plaintiff has failed to state a claim upon which relief can be granted, the Court **dismisses this action with prejudice**, and does not grant Plaintiff leave to file a second amended complaint because additional amendment would be futile.

## I. Standard

Under 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's Amended Complaint must be reviewed and, if found to be frivolous or malicious, to not state a claim on which relief may be granted, or to seek monetary relief against a defendant who is immune, then the court must dismiss the case. Courts have held that the screening procedure set out in § 1915(e)(2) applies to all litigants proceeding *in forma pauperis*.[6] It is well-established that:

> Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. In determining whether a dismissal is proper, we must accept the allegations of the complaint as true and construe those allegations, and any reasonable inference that might be drawn from them, in the light most favorable to the plaintiff. In addition, we must construe a *pro se* appellant's complaint liberally.[7]

Section 1915(e)(2)(B) allows a district court to dismiss a complaint "at any time," and there is no requirement under the statute that the court must first provide notice or an opportunity to respond.[8]

---

[6] *See Alexander v. Wichita Hous. Auth.*, No. 07-1149-JTM, 2007 WL 2316902, at *2 (D. Kan. Aug. 9, 2007) (citations omitted).

[7] *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002) (internal quotation marks and citations omitted).

[8] *See Jones v. Barry*, 33 F. App'x 967, 971 (10th Cir. 2002).

In applying § 1915(e)(2) to pleadings of a *pro se* litigant, the court must liberally construe the pleadings and hold them to a less stringent standard than formal pleadings drafted by attorneys.[9]  The court's role is not, however, to act as a *pro se* litigant's advocate.[10]  "To state a claim, the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'"[11]  Dismissal is appropriate when "it is obvious that the plaintiff cannot prevail on the facts [ ] he has alleged and it would be futile to give [him] an opportunity to amend."[12]

## II.     Amended Complaint

As a preliminary matter, the Court does not consider allegations against "Rachel Gossett" or "Kristen Byers, fka [sic] Kristen Rice," to which Plaintiff refers as defendants, but are not named defendants in this case.[13]  As a second preliminary matter, the Court notes that Plaintiff's factual allegations are unclear.  Most prominently, Plaintiff refers to various civil and criminal actions in his factual allegations, including his own detention in the Orange County, California jail, though the nature of these proceedings is not stated and/or is unclear.  With this in mind, the Court recites the factual allegations of Plaintiff's Amended Complaint.

Plaintiff alleges he is the legal beneficiary of several trusts and that Defendants stole, concealed, or tampered with documents related to the trusts to deprive him of his inheritance, frame him for an unnamed crime, and to commit extortion against him.  Plaintiff alleges Defendants conspired with one another, law enforcement, and attorneys they hired in committing

---

[9] *Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir. 2006).

[10] *Lyons v. Kyner*, 367 F. App'x 878, 881 (10th Cir. 2010).

[11] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); s*ee also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[12] *Peoples v. Langley/Empire Candle Co.*, No. 11-2469, 2012 WL 171340, at *1 (D. Kan. Jan. 20, 2012) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[13] *See* Doc. 6 at 8, 9.

these acts, and stole almost $1,000,000.00, of which "at least one third" belongs to Plaintiff, and stole a $320,000.00 investment owned by Plaintiff.  He alleges the conspiracy includes stealing and concealing "critical documents of the estate," making false police reports to make it appear as if Plaintiff violated his probation, "undue influence, fraud, breaking and entering and burglary, tampering with evidence (Spoilation), extortion, [and] blackmail."[14]  Plaintiff further alleges that Defendants are "harassing" him in both federal and state courts in Kansas and Missouri.[15]

At a November 13, 2013 California Probate hearing involving Plaintiff's family estate, non-party Kristen Byers told Plaintiff, "If you do not walk away from your family estate, my husband will make sure you and your nigger wife will go to prison."[16]  Kristen Byers is the mother-in-law to Defendant Scott Gossett, and her husband is non-party Ronald Byers, a 30-year veteran Deputy Sheriff of the Orange County Sheriff's Department.  Plaintiff alleges that, through this statement and other unspecified conduct, Defendant Gossett, Kristen Byers and Ronald Byers threatened Plaintiff with extortion and malicious prosecution to obtain the $1,000,000.000 he alleges Defendants stole.

Because Plaintiff did not "walk away" from the probate case and his inheritance, Defendants framed him for an unspecified crime with the help of Orange County law enforcement.  Specifically, while Plaintiff and his then-wife were in Orange County jail from July 5, 2016 to October 2, 2016 for a reason Plaintiff does not mention, Defendants Gossett, Rice and Jandt broke into Plaintiff's California office and Kansas residence to steal "exculpatory evidence" during an unspecified "Kansas civil action" and during Plaintiff's bankruptcy

---

[14] *Id.*; *Id.* at 3.

[15] *Id.* at 4.

[16] *Id.* at 9.

4

proceeding.[17]  Plaintiff further alleges that Defendants Gossett, Rice, and Jandt changed the locks to the residence, and lied to police who responded to a burglary alarm following the break-in. Plaintiff alleges Defendants were never charged for these crimes "thanks to their law enforcement connections."[18]

While Plaintiff was in jail, Orange County officers told him and his then-wife to plead guilty or they would "never get out of jail."[19]  Plaintiff was "faced with 62 trumped up felonies" and as a result of the threat, "pled guilty to a number of felonies."[20]  Plaintiff alleges a $304,000.00 judgement was entered against him on July 19, 2016, following the "forced guilty plea under police threats, and extortion as restitution."[21]  Plaintiff further alleges that a District Attorney—whom he does not name—has proof that Plaintiff did not commit any crime.

When Plaintiff was released from jail as part of his plea agreement for the crimes, his probation was transferred to Kansas where he lives.  After his guilty plea, "Defendants engaged in a flurry of litigation against the Plaintiff using the Plaintiff's coerced guilty plea as their weapon."[22]  Plaintiff alleges that when he sought protection from police and "redress with the civil courts" from Defendants' litigation, Defendants Gossett, Rice, and Beswick started making false police reports in California and North Carolina to make it appear as if Plaintiff had violated his probation conditions.[23]

---

[17] *Id.*; Doc. 7 at 4.  Plaintiff states a different date range of the alleged break-in in his Response to the show cause order: July—September of 2016.  *Id.*  At separate times, Plaintiff refers to the Kansas residence as his residence and his former wife's residence.

[18] Doc. 6 at 9.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 6.

[22] *Id.* at 10.

[23] *Id.*

5

As a result of the false reports, Plaintiff alleges he was arrested in Kansas City on January 25, 2018, extradited to Orange County, and again threatened by Orange County officers and told to plea guilty to the violations.[24]  Plaintiff did not admit to the probation violations, was "found innocent" of violating his probation on March 29, 2018, and released from jail in April 2018.[25]

Plaintiff alleges that one or more Defendants and non-parties hired a Kansas attorney who is in possession of Plaintiff's "stolen property" and is manipulating it "to continuously slander and defame [Plaintiff] while concealing other exculpatory evidence of [Plaintiff's]" in conspiracy with Defendants.[26]  Plaintiff further alleges that the attorney admitted in a Kansas City, Kansas court that Defendants gave him "stolen documents and/or information that he himself is still in possession of belonging to [Plaintiff]."[27]

Plaintiff also references an "irrevocable trust and invalid revocable trust, in which defendants are trustees," that he alleges is in possession of his "personal property, exculpatory evidence, intellectual property, and financial documentation which would devastate the defendants allegations against [Plaintiff] and prove [Plaintiff's] case against the Defendants."[28]

Finally, Plaintiff alleges that between September 2017 and September 2018, Defendants continued making false police reports and committing "[m]ore slander and conspiracy under the RICO act to gain more money and commit more fraud" in order to receive a bigger judgement against him in California Probate court.

---

[24] Plaintiff does not specify whether his arrest occurred in Kansas City, Kansas, or Kansas City, Missouri.

[25] Doc. 6 at 10.

[26] *Id.* at 4.

[27] *Id.* at 5.

[28] *Id.*

**III.     Plaintiff's Response to Show Cause Order**

Plaintiff alleges additional facts not mentioned in his Amended Complaint in his Response to the show cause order. He states that Defendant Beswick is his brother, and trustee of "Jackson Family Trusts."[29] He further alleges that Beswick hired a second attorney to file a fraudulent claim of $1,500,000.00 as a creditor in Plaintiff's bankruptcy proceeding in Kansas. The "Proof of Claim" form that Plaintiff attaches to his response names "Jordan Beswick, Rachel Gossett, The Jackson Family Trust, Trust 'A' and Irrevocable Trusts" as creditors in Plaintiff's bankruptcy case and seeks damages for Plaintiff's defalcation of trust assets.

An attachment to the form states that "[a]mong other things, the Probate Court removed [Plaintiff] as co-trustee of the Trusts, surcharged him $302,728.08 to be returned to Trust C and quieted title to 40932 Arron Court, Murrieta, CA in favor of Trust B."[30] The attachment shows the total estimated calculation of the claim is $1,521,390.39, comprised of $304,278.08 in "Damages per Order for summary adjudication" and $1,217,112.31 in "Additional remaining damages and claims (estimated)."[31]

**IV.     Discussion**

Plaintiff asserts two claims in his Amended Complaint: "Count 1: Title 42 U.S. Code § 1983 EXTORTION UNDER THE COLOR OF LAW" and "Count 2: INTENTIONAL TORT – 15 U.S. Code § 6611, includes trespass to chattel, under the RICO act codified in 18 U.S.C. sections 1961-68."[32]

---

[29] Doc. 7 at 2.

[30] *Id.* at 6.

[31] *Id.*

[32] Doc. 6 at 11–12.

7

The Court construes Count 1 as a claim that Defendants' conduct violated Plaintiff's constitutional rights under 42 U.S.C. § 1983.  The Court construes Count 2 as two independent claims.  First, the Court dismisses any claim arising under 15 U.S.C. § 6611, which provides for tort damages as a result of the "Y2K failure," as this statute is wholly irrelevant to Plaintiff's factual allegations.  Second, the Court construes Plaintiff's claim as a private right of action under RICO, 18 U.S.C. § 1964(c).  To the extent Plaintiff makes independent claims of extortion, trespass to chattel, or other intentional torts, he cites no authority, sets forth no elements, nor discusses these specific claims.  The Court declines to construct a legal theory on Plaintiff's behalf and, accordingly, to the extent Plaintiff makes these claims, they are dismissed.

Preliminarily, none of Plaintiff's allegations contain "specific factual allegations" as required by the minimum standard of pleading, and offer only "labels and conclusions."[33]  Moreover, Plaintiff's conclusions that Defendants filed a fraudulent creditor's claim in Plaintiff's bankruptcy proceeding and other general allegations of "fraud" fall especially short of the heightened pleading standard for such allegations which requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake."[34]  With this in mind, the Court finds Plaintiff fails to state a claim upon which relief may be granted for reasons discussed below.

### A. Section 1983 Claim

Plaintiff fails to state a claim under § 1983 because he offers no evidence of state action.  Pursuant to § 1983, any person who "under color of … [law] … subjects, or causes to be subjected, … any [person] … to the deprivation of any rights, privileges, or immunities secured

---

[33] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).

[34] Fed. R. Civ. P. 9(b)

8

by the Constitution and laws, shall be liable to the party injured."[35]  Section 1983 does not create any substantive rights.[36]  Rather, § 1983 provides only a right of action to remedy a violation of a right secured by the Constitution or laws of the United States.[37]  It is not requisite that Defendants are officers of the state in order to act under the color of law for purposes of § 1983.[38]  "Private individuals and entities may be deemed state actors [] if they have 'acted together with or [have] obtained significant aid from state officials, or [if their] conduct is otherwise chargeable to the state.'"[39]

Plaintiff fails to plead the existence of state action under § 1983 by alleging that Defendants filed false police reports because "[t]he Tenth Circuit consistently has held citizens who merely make complaints or furnish information to police officers that result in arrests are not state actors."[40]  Furnishing information to law enforcement does not, then, render a private citizen liable under § 1983.[41]  Moreover, Plaintiff merely states without specificity that Defendants made "false reports," but does not allege the nature of these police reports or what false information they contain.

Likewise, Plaintiff's allegations of Defendants' conspiracy with law enforcement are impermissibly conclusory and do not establish state action.  "When a plaintiff in a § 1983 action attempts to assert the necessary 'state action' by implicating state officials or judges in a

---

[35] 48 U.S.C. § 1983.

[36] *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

[37] *Id.*; *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).

[38] *Bailey v. Kenney*, 791 F. Supp. 1511, 1522 (D. Kan. 1992).

[39] *Johnson v. Rodrigues*, 293 F.3d 1196, 1203 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (2002)).

[40] *Powell v. Miller*, 104 F. Supp. 3d 1298, 1310 (W.D. Okla. 2015) (citing *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402 (10th Cir. 1987); *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)).

[41] *Benavidez*, 722 F.2d at 618.

conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."[42]  Here, Plaintiff's general allegations of "conspiracy" with law enforcement and that Defendants "prejudiced the courts" and "officers of the court" lack any factual support.[43]  Because Plaintiff does not offer evidence of state action, he fails to state a claim under §1983, and this claim is dismissed.

### B.     RICO Claim

Congress enacted RICO to eradicate organized crime in the United States through severe criminal penalties.[44]  Section 1964(c) of the Act provides a private right of action to vindicate a person's right to avoid injury to business or property caused by a pattern of racketeering activity.[45]  To state a claim under § 1964(c), a plaintiff must plead that the defendant violated § 1962.[46]  Section 1962(c) "makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity."[47]  Thus, to maintain a private right of action based on violation of § 1962(c), the plaintiff "'must plausibly allege that' the defendants 'each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[48]  Racketeering activity encompasses "dozens of state and federal offenses" including crimes under specified federal statute, crimes under state

---

[42] *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)).

[43] Doc. 6 at 11.

[44] Racketeer Influenced and Corrupt Organizations Act, Pub.L. 91-452, 84 Stat. 922, 923 (1970); *Beck v. Prupis*, 529 U.S. 494, 495–96 (2000).

[45] *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016) (discussing 18 U.S.C. § 1964(c)).

[46] *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017).

[47] *RJR Nabisco*, 136 S. Ct. at 2097.

[48] *Safe Sts. All.*, 859 F.3d at 882 (quoting *George v. Urban Settlement Servs.*, 883 F.3d 1242, 1248 (10th Cir. 2016)).

law, and offenses involving bankruptcy or securities fraud or drug-related activity that is punishable under federal law.[49]

Plaintiff fails to state a claim under RICO because he fails to plead evidence of a racketeering activity, much less a pattern of racketeering which requires at least two instances of racketeering conduct to demonstrate a "threat of continued criminal activity."[50] Construing Plaintiff's Amended Complaint generously, Plaintiff alleges Defendants engaged in racketeering conduct by filing a false creditor's claim in Plaintiff's bankruptcy proceeding and by instigating other, unnamed litigation against Plaintiff. Neither allegation contains factual specificity as to the nature of these proceedings, nor how Defendants alleged actions are fraudulent or otherwise criminal. Filing a fraudulent creditor's claim in a bankruptcy action may be deemed a racketeering activity under RICO.[51] However, the proof of claim form Plaintiff attaches to his response shows no evidence of fraud. Although the form shows some of the named Defendants filed a claim in Plaintiff's bankruptcy proceeding, Plaintiff merely states this claim is fraudulent, and offers no evidence in support. Plaintiff's conclusory allegations of fraud are insufficient to show racketeering activity, and therefore insufficient to state a claim under RICO. Accordingly, Plaintiff's RICO claim is dismissed.

### C. No Leave to Amend

The Court finds further amendment to Plaintiff's Complaint would be futile and, accordingly, does not grant Plaintiff leave to amend. Although § 1915(e)(2)(B) does not require the Court to provide notice or an opportunity to respond before dismissing a deficient complaint, "a 'district court should allow a plaintiff an opportunity to cure technical errors or otherwise

---

[49] *RJR Nabisco, Inc.*, 136 S. Ct. at 2096.

[50] *Id.* at 2096–97 (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

[51] 18 U.S.C. § 1961(1)(D); *see RJR Nabisco,* 136 S.Ct. at 2096–97.

amend the complaint when doing so would yield a meritorious claim.'"[52]  Leave need not be granted if amendment would be futile.[53]

Although Plaintiff was put on notice of deficiencies in his original Complaint by the show cause order, Plaintiff failed to cure them in his Amended Complaint, or address them in his Response to the show cause order.  Plaintiff has not filed a motion requesting leave to file a second amended complaint, nor has he explained why he failed to cure pleading deficiencies in his Amended Complaint.  Further, Plaintiff's Amended Complaint offers few additional facts from those found in his original deficient Complaint and instead bases a new set of claims on these same facts.  The Court finds a third attempt to state facts in support of a claim is unwarranted because "courts should deny leave to amend when it appears that the plaintiff is attempting 'to make the complaint a moving target[.]'"[54]  Based on the foregoing discussion, which found Plaintiff failed to state a claim, any possible amendment would be futile.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Amended Complaint (Doc. 6) is **dismissed with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**IT IS SO ORDERED.**

Dated: June 18, 2020

                                              S/ Julie A. Robinson
                                              JULIE A. ROBINSON
                                              CHIEF UNITED STATES DISTRICT JUDGE

---

[52] *Jones v. Barry*, 33 F. App'x 967, 971 (10th Cir. 2002) (quoting *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001), *cert. denied*, 534 U.S. 922 (Oct. 1, 2001) (No. 01-5423)).

[53] *Peoples v. Langley/Empire Candle Co.*, No. 11-2469-CM-JPO, 2012 WL 171340, at *1 (D. Kan. Jan. 20, 2012) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[54] *Mayfiled v. Garcia*, No. 16-0805-JB/WPL, 2017 WL 3149358 * 1, 3 (D.N.M. June 2, 2017) (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006)) (internal quotations omitted).